IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROSITA ANTONIO,

     Plaintiff,

vs.

LOVELACE HEALTH SYSTEMS,
INC.,

     Defendant.

No. 05cv1118 PK/LFG

FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS MATTER came on for trial before the Hon. Paul J. Kelly, Jr., sitting by designation, without a jury on April 10 and 11, 2007.   The Plaintiff appeared in person and was represented by her attorneys, Donald G. Gilpin and M.J. Keefe, Gilpin and Keefe, P.C.   The Defendant (sometimes referred to as "Lovelace") appeared by its duly authorized representative, Jolie McKeon, and its attorneys, Amelia M. Willis, Epstein, Becker & Green, P.C., and R. Nelson Franse, Rodey, Dickason, Sloan, Akin & Robb, P.A.  The court, having heard the evidence and argument, reviewed the pleadings and exhibits, and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

## Findings of Fact

1.     Plaintiff is Native American, a member of the Navajo Tribe, and was over the age of 40 at all relevant times.

2.     Plaintiff was employed as a nurse technician at Lovelace Sandia Health Systems, Inc. or its predecessor beginning July 2, 1979, and continuing until her termination on May 6, 2004.  She was considered a very good nurse technician by all of her supervisors.

3.     Plaintiff claims employment discrimination based upon age and race, as well as retaliation.  Doc. 55 at 3, § III(A) (amended Pretrial Order).

4.     At all relevant times, Lovelace had in force and effect an attendance policy that provided that, after 9 occurrences (periods of unscheduled absence) in any 12-month period, an employee would be terminated.

5.     The attendance policy was contained in the employee handbook, was posted in the employee lounge or breakroom and was available in the office of the charge nurse.  The policy was also available on the company intranet and was given to an employee when the employee was placed on corrective action.

6.     Plaintiff denied having received an employee handbook but conceded she had signed an acknowledgment of its receipt.

7.     The attendance policy had not been uniformly followed prior to the year 2003, when Ardent acquired Lovelace.  Shortly after the acquisition, the

various floor managers held staff meetings to explain the attendance policy and advise staff that it would now be enforced.  Each employee was given a copy of the policy at that time.

8.  Plaintiff was aware of the attendance policy but did not know how many of her absences were excused.

9.  Plaintiff was under the mistaken belief that, if she called in to the charge nurse, any unscheduled absence would be excused.

10.  The attendance policy provided for a system of progressive discipline. Plaintiff was aware that 7 unexcused absences would result in a warning (Step I Corrective Action), which she admitted receiving.  Plaintiff had at least 7 unexcused absences when the process of progressive discipline started.

11.  Plaintiff also was aware that after 8 unexcused absences she would receive a final warning (Step II Corrective Action), which she also admitted receiving.  Plaintiff  also was aware that after 9 unexcused absences she could be terminated (Step III Corrective Action).

12.  On February 26, 2004, Plaintiff had an unexcused absence.  On March 1, 2004, Plaintiff received her final warning based on that absence and knew that if she incurred another unexcused absence she would be terminated.

13.  Although available to her, Plaintiff did not seek unpaid Family and

Medical Leave when her mother was injured in an auto accident in February 2004. Plaintiff subsequently was approved for Family and Medical leave but did not utilize it.

14.    Plaintiff missed work on May 1, 2004, and upon her return to work on May 6, 2004, was told she was terminated. Although she had missed work due to illness, Plaintiff had not obtained the approval of a manager for an excused absence.

15.    Plaintiff claims that, on two separate occasions over a period of several months, she overheard a manager (Connie Stephens) refer to her as "that Indian" or "that Navajo" when instructing another employee whom to go to for assistance.

16.    Plaintiff was offended by these references, but could not recall when they occurred.

17.    Plaintiff also was offended by a comment which she attributed to her coworkers that "there were too many chiefs and not enough Indians."

18.    Plaintiff could not identify coworkers who made such comments or when they occurred.

19.    Plaintiff claims that another manager (Julie Kennelly) said, "I don't know why you're still here, Rosie. You should have been fired a long time ago," and that this manager told her that an absence "was uncalled for." Plaintiff also testified that she was asked when she was going to

-4-

retire by coworkers and a manager and that she was told she was "over the hill," and the like.

20. Plaintiff could not identify coworkers who made such comments or when they occurred. The managers deny making or overhearing such comments.

21. Plaintiff never complained to management about any of the above comments, although Lovelace had in place policies that prohibit discrimination.

22. These alleged comments were isolated and did not result in a hostile work environment, alone or in combination with one another.

23. No persuasive evidence was introduced to suggest that race, age or retaliation had anything to do with Plaintiff's termination. Nor does any persuasive evidence suggest that Plaintiff was treated less favorably, for example, regarding patient load, than other similarly-situated employees. Plaintiff was not terminated or discriminated against due to her Native American ancestry, age, or in retaliation for any complaints about discrimination. Given her testimony that she never complained to management about the alleged discriminatory comments, Plaintiff has come forward with no evidence that retaliation motivated her termination.

24. Lovelace enforced its attendance policy in an equal fashion without

regard to the age or ethnicity of the employee, and in a non-retaliatory manner. The policy also was applied regardless of the quality of an employee's work.

25. The Lovelace manager (Julie Kennelly) who actually terminated Plaintiff immediately hired a person over 40 years of age and another individual who was a Native American.

26. Although Plaintiff intended to retire in July 2004, Lovelace had no retirement plan, and she would not have been entitled to any other benefit. She would not have been entitled to continuing healthcare benefits because she would have been under 55 years of age.

27. Many other employees were placed on corrective action for having excessive unscheduled absences without regard to age or ethnicity.

28. Plaintiff was terminated for excessive unexcused absences and said termination had nothing to do with age, ethnicity or retaliation.


## Conclusions of Law

1. The court has jurisdiction over the parties and subject matter. Venue is proper in the District of New Mexico.

2. Defendant had ample justification for terminating the Plaintiff due to excessive absences in violation of its stated policy. Plaintiff was terminated for a legitimate, non-discriminatory and non-retaliatory

reason.   The reasons given by Defendant for its actions were not pretextual.

3.   Although Defendant's policy of not excusing unscheduled illness may appear harsh and inconsistent with patient and employee welfare, the policy was applied even-handedly, and was not a pretext for discrimination based on protected status.  See EEOC v. Flasher Co., 986 F.2d 1312, 1320 (10th Cir. 1992).  Moreover, the harshness of the policy was tempered somewhat by the fact that six unscheduled absences could occur prior to Step I corrective action and by the need to ensure employee attendance for patient care.  Regardless, it is not for the court to second-guess the wisdom of Defendant's evenly applied personnel policies.  See Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1203 (10th Cir. 2006) (holding that the court is not "a super personnel department that second guesses employers' business judgments") (internal quotation marks omitted).

4.   Plaintiff was an "employee at will" and has not shown that she was terminated or suffered any other adverse action based on any protected status.  Nor has she shown that discrimination or retaliation was a motivating factor in any employment matter of which she complains.

5.   Plaintiff is not entitled to any relief.

6.   For these reasons, Plaintiff should take nothing on her complaint, the

court should dismiss the actions on its merits, and the court should

award costs to Defendant.

DATED this <u>24th</u> day of April 2007, at Santa Fe, New Mexico.

_____   _____
                            United States Circuit Judge
                            Sitting by Designation